# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



Supreme Court of Kentucky

2018-SC-000087-MR

DATE 7/5/19 Kim Redmon, DC

JOSHUA MCALPIN                                         APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.              CASE NO. 2016-CA-001360-MR
JEFFERSON CIRCUIT COURT NO. 14-CR-001309


COMMONWEALTH OF KENTUCKY                              APPELLEE


**OPINION OF THE COURT BY JUSTICE LAMBERT**

**AFFIRMING IN PART AND REVERSING IN PART**


Joshua McAlpin is appealing his conviction of one count of first degree possession of a controlled substance. McAlpin was sentenced to three years imprisonment for this conviction following a jury trial in Jefferson Circuit Court. He asserts the following arguments on appeal: (1) the jury instructions violated his right to a unanimous verdict; and (2) there was insufficient evidence to sustain his conviction. Based upon the following, we affirm in part and reverse in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2011, officers from both the Kentucky Division of Probation and Parole and the Louisville Metro Police Department went to McAlpin's apartment in search of Amelia Durham. Amelia, a known heroin

user, was a parolee who failed to comply with her conditions of release, and the officers were trying to locate and arrest her. Amelia was staying on and off at McAlpin's apartment, and Amelia's father gave the officers McAlpin's address.

When the officers knocked Amelia came to the apartment door and agreed to let them in. They did a standard "safety sweep" of the apartment to verify that no one but Amelia was there. During this sweep they saw several syringes and spoons in plain sight scattered throughout the apartment.

Shortly after the officers' arrival two other men came to the apartment: Silas Koger and Clark Duerr. Silas, like Amelia, was staying at McAlpin's apartment from time to time. Both Silas and Clark were admitted heroin users. The officers searched Silas and Clark's persons and vehicles but found nothing illegal. After ascertaining that neither of the men had any active warrants, they let the pair leave. It was later determined, and was undisputed, that one of the spoons found in the home belonged to Silas. The spoon was found hidden in a laundry basket near the entrance of the home. The basket and all the clothing in it belonged to Silas.

Shortly after Silas and Clark left, McAlpin arrived home from work. His person and vehicle were also searched and nothing illegal was found. There was conflicting evidence at trial about whether McAlpin was a heroin addict: the investigating officers said he was, but Amelia testified that, although he had abused prescription pills in the past, he was not a heroin user. Amelia

2

also testified that all of the spoons, cotton pieces,[1] and syringes found, apart from the spoon that belonged to Silas, were hers.

Ultimately, the officers arrested Amelia and wrote a citation for McAlpin that they did not file at the clerk's office. McAlpin was indicted over a year later in June 2012, and the case went to trial in June 2016. McAlpin was convicted of one count of possession of a first-degree controlled substance and one count of possession of drug paraphernalia. He was sentenced to three years on each count to run concurrently.

The Court of Appeals vacated McAlpin's possession of paraphernalia conviction because: (1) the one-year statute of limitations ran prior to his indictment; (2) the jury instructions failed to include the requirement that the offense be committed within a year preceding the indictment; and (3) he was sentenced to three years when possession of paraphernalia carries a maximum penalty of only twelve months. The Court of Appeals affirmed his possession conviction, which he now appeals to this Court.

Additional facts are discussed below as necessary.

## II.  ANALYSIS

### A. MCALPIN'S RIGHT TO A UNANIMOUS VERDICT WAS NOT VIOLATED

McAlpin's first argument is that the jury instruction on Possession of a Controlled Substance violated his right to a unanimous verdict under *Johnson*

---

[1] One of the investigating officers testified that, after mixing heroin in its powdered form with water in a spoon, a heroin user will put a small piece of cotton in the mixture to act as a kind of filter. After the cotton has absorbed the mixture they will pull it into a syringe directly from the piece of cotton.

3

*v. Commonwealth,*[2] *Kingrey v. Commonwealth,*[3] and their progeny. He

concedes this error was not preserved and has therefore requested palpable

error review under RCr[4] 10.26. RCr 10.26 provides:

> A palpable error which affects the substantial rights of
> a party may be considered by the court on motion for a
> new trial or by an appellate court on appeal, even
> though insufficiently raised or preserved for review, and
> appropriate relief may be granted upon a determination
> that manifest injustice has resulted from the error.

This Court has previously held that a violation of a defendant's right to a

unanimous verdict "also touches on the right to due process" and is therefore

"a fundamental error that is jurisprudentially intolerable."[5] Therefore, a

violation of the right to a unanimous verdict is automatically deemed palpable

error.

The right to a unanimous jury verdict under the U.S. Constitution does

not apply to the states, but it is nonetheless protected under Section 7 of

Kentucky's Constitution.[6] This Court dealt with untangling the issue of juror

unanimity at length in both *Johnson* and *Kingrey.* McAlpin now argues that

these cases require a finding that his right to a unanimous verdict was

---

[2] 405 S.W.3d 439 (Ky. 2013).

[3] 396 S.W.3d 824 (Ky. 2013).

[4] Kentucky Rules of Criminal Procedure.

[5] *Johnson,* 405 S.W.3d at 457; *See also, Kingrey,* 396 S.W.3d at 831-32.

[6] *Wells v. Commonwealth,* 561 S.W.2d 85, 87 (Ky. 1978) ("Section 7 of the
Kentucky Constitution requires a unanimous verdict reached by a jury of twelve
persons in all criminal cases.").

4

violated. However, we believe those cases are distinguishable from the circumstances before us.

In *Johnson*, the defendant was convicted of murdering and committing one count of first-degree criminal abuse against the decedent, her two-year-old son.[7] A forensic pathologist testified that the infant suffered three distinct leg fractures at different times prior to his death. *Id.* at 443. She described the first fracture as a "toddler fracture." *Id.* at 445. This kind of fracture is fairly common and, in her opinion, was not indicative of abuse. *Id.* However, the other two fractures were indicative of abuse. *Id.* at 446. The pathologist determined that the remaining two fractures occurred at different times based on the amount of healing that occurred. *Id.* The second fracture likely occurred in mid-September 2009, while the third fracture occurred around the first week of October 2009. *Id.*

The unanimity issue in *Johnson* emanated from the jury instructions on First-Degree Criminal Abuse which read:

> You will find the Defendant guilty of First-Degree
> Criminal abuse under this instruction if, and only if,
> you believe from the evidence beyond a reasonable
> doubt all of the following:
>
> A. That in this county on or about and **between
> the dates of August 28, 2009 and October 23,
> 2009**, and before the finding of the indictment
> herein, she intentionally abused [the decedent];
>
> B. That she thereby caused a serious physical
> injury to [the decedent];

---

[7] *Johnson*, 405 S.W.3d at 441.

5

C. That [the decedent] was at that time 12 years of age or less; AND

D. That the abuse inflicted was other than the fatal injury to [the decedent's] abdomen that occurred on or about October 23, 2009.

*Id.* at 447-48 (emphasis added). We held that this instruction violated the defendant's right to a unanimous verdict because the child's second and third leg fractures each could have independently qualified as criminal abuse, but both of the fractures occurred "between the dates of August 28, 2009, and October 23, 2009," and the instructions "did not require the jury to differentiate which of the two instances was the basis of the conviction." *Id.* at 448-49.

Put simply, the defendant's right to a unanimous verdict was violated because it was impossible to determine upon which of the two fractures the jury chose to convict. For instance, it is possible that five of the jurors based their vote to convict on the second fracture while the remaining seven based their vote on the third fracture. This Court ultimately held "that such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Id.* at 449.

A similar scenario presented itself in *Kingrey,* which this Court rendered the same day as *Johnson.* In that case, the defendant hosted a party for his

sixteen-year-old daughter, Emma.[8] He rented a venue and bought a large amount of alcohol for the party. *Id.* Everyone in attendance apart from the defendant was under the age of eighteen. *Id.* One of the party's attendees was the defendant's sixteen-year-old niece, Sophia. *Id.* Because of a truth or dare game that the defendant started and controlled, Sophia undressed completely. *Id.* While naked, Sophia received a lap dance from another girl at the party and performed oral sex on her boyfriend. *Id.*

Prior to this party another incident occurred when Sophia was fifteen. *Id.* The defendant brought Sophia and her then fourteen-year-old boyfriend home and had Sophia "model" underwear sets and walk around completely nude while the defendant and Sophia's boyfriend watched. *Id.*

The defendant was ultimately convicted of several offenses in relation to several victims, but the one pertinent to our analysis was his conviction of one count of using of a minor under the age of 18 in a sexual performance in relation to Sophia. *Id.* at 828. The jury instructions required a finding that the defendant used Sophia in a sexual performance between January 1, 2007, and May 31, 2008. *Id.* at 830. But both the party and the incident with Sophia "modeling" for the defendant occurred during this date range. *Id.* The defendant argued, and this Court agreed, that his right to a unanimous verdict was violated because "some jurors might have convicted him of knowingly employing, authorizing, or inducing Sophia to engage in a sexual performance

---

[8] *Kingrey*, 396 S.W.3d at 827.

at the party, while other jurors convicted him of doing so when he asked Sophia to model the underwear sets." *Id.* We therefore remanded the case and echoed our holding in *Johnson* that "[a] general jury verdict based on an instruction including two or more separate instances of a criminal offense violates the requirement of a unanimous verdict." *Id.* at 831.

In this case, McAlpin argues his right to a unanimous verdict was violated because there were several different potential sources of heroin found in the home—four pieces of cotton and seven spoons—from which the jury could have found that he possessed heroin, but nothing in the jury instructions specified which item was to be considered the heroin source. Therefore, he argues, there was no way to know from which item the jury determined McAlpin possessed heroin. For example, half of the jurors could have believed he possessed heroin because of Spoon number five, while the other half believed he possessed heroin because of Cotton Piece number three. We disagree.

The holdings in those cases state that a "general jury verdict based on an **instruction including two or more separate instances of a criminal offense** violates the requirement of a unanimous verdict."[9] This is because both of those cases dealt with two instances of conduct, occurring on different dates, either of which could have qualified for a conviction of the charged offense.

---

[9] *Id.*; *Johnson*, 405 S.W.3d at 449.

Here, there was only one alleged instance of criminal conduct that occurred on one day, as the jury instructions clearly reflect:

> You will find the defendant, Joshua McAlpin, guilty of Possession of a Controlled Substance First Degree (Heroin) under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Jefferson County, Kentucky on February 10, 2011, Joshua McAlpin knowingly had in his possession a quantity of heroin; AND
>
> B. That Joshua McAlpin knew the substance possessed by him was heroin.

Therefore, unlike in *Johnson* and *Kingrey*, we know that the jury chose to convict McAlpin because it believed beyond a reasonable doubt that McAlpin possessed heroin on February 10, 2011. The evidence did not demonstrate another instance of possession of heroin that occurred on a different date, and the jury instructions did not have a date range within which time both instances were committed. Therefore, *Johnson* and *Kingrey* do not apply, and McAlpin's right to a unanimous verdict was not violated.

## B. THE EVIDENCE WAS INSUFFICIENT TO CONVICT MCALPIN FOR POSSESSION OF HEROIN

McAlpin next argues that the Commonwealth's evidence was insufficient to convict him of possession of heroin, and that the trial court therefore should have granted his motion for directed verdict.[10] We agree.

---

[10] This error was properly preserved by McAlpins's motion for directed verdict at the end of the Commonwealth's proof, renewed motion for directed verdict at the close

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[11] Therefore, to reverse McAlpin's conviction, we must be satisfied that it was clearly unreasonable for the jury to find that he possessed heroin. "The definition of 'possession' under the Kentucky Penal Code only applies to penal code offenses, and KRS[12] Chapter 218A does not define "possess" or any of its cognate forms."[13] The most common definition of criminal possession, and the one utilized by the jury instructions in this case, is "to have actual physical possession or otherwise to exercise dominion and control over a tangible object."[14] That definition encompasses the two different kinds of possession: actual and constructive. To have actual possession means that one has "actual physical possession" of a tangible object, while constructive possession means that one "exercise[s] dominion and control over a tangible object."

In the case at bar, McAlpin was not found to be in actual possession of heroin, as none was found on his person. Therefore, the Commonwealth needed to prove he had constructive possession of the heroin, i.e. that it was

---

of all proof, and motion for judgment of acquittal/new trial. Kentucky Rules of Civil Procedure (CR) 50.01; *Pate v. Commonwealth*, 134 S.W.2d 593, 597-98 (Ky. 2004).

[11] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[12] Kentucky Revised Statutes.

[13] *Pate*, 134 S.W.3d at 598 (footnotes omitted).

[14] *See also, Hayes v. Commonwealth*, 175 S.W.3d 574, 593 (Ky. 2005) ("'possession' for purposes of penal code offenses 'means to have actual physical possession or otherwise to exercise actual dominion or control over a tangible object.'").

10

under his dominion and control. In addition, there was joint control of McAlpin's home: it was undisputed that Amelia Durham and Silas Koger were both staying there. "A defendant's exclusive control over the premises is sufficient to raise an inference of possession and knowledge. However, **joint control of the premises requires further evidence to prove the defendant knew the substance was present and had it under his control.**"[15]

Thus, to meet its burden of proof the Commonwealth had to satisfy a heightened standard in demonstrating that McAlpin (1) knew the substance was present, and (2) had it under his control to prove he had constructive possession of it. We are of the opinion it failed to do so.

To begin, it is impossible for anyone, let alone the jurors, to know where the heroin actually came from. No measurable amounts of heroin were found in the home; it was found in the form of residue. The forensic scientist who tested those items testified:

> **CW:**[16]  I believe you also said that part of your job is, after you perform analysis, you generate reports, is that correct?
>
> **WITNESS:** Yes.
>
> **CW:** I'm showing you what has already been marked as "Defense Exhibit 1" and "Defense Exhibit 2." Do you recognize those?
>
> **WITNESS:** Yes.

---

[15] *Hayes*, 175 S.W.3d at 594 (citing *State v. Villaneuva*, 147 S.W.3d 126, 130 (Mo. Ct. App. 2004)) (emphasis added).

[16] Commonwealth.

11

**CW:** Is that a copy of the report you made and your signature down at the bottom?

**WITNESS:** Yes, it is.

**CW:** Now, there were two reports done in this case, is that correct?

**WITNESS:** Yes.

**CW:** Can you describe to the jurors the contents of the first, the earliest report? Or what your findings were?

**WITNESS:** Sure. I received four different items. The first item was a round green tablet marked "TEVA" "883," and there was no analysis performed on that item. Item 2 was one hexagonal orange tablet marked "N8" with a sword logo and several similar tablet fragments. That item was found to contain buprenorphine,[17] a Schedule III narcotic. Item 3 was residue on four pieces of cotton, and no analysis was performed on that item. And then Item 4 was residue on seven metal spoons, a piece of metal clamp, and an empty syringe bag. Also no analysis performed.

**CW:** And the second report please?

**WITNESS:** In the second report item 1 was the same one round green tablet marked "TEVA" "833," and that was identical in appearance to a pharmaceutical preparation of clonazepam, a Schedule IV non-narcotic. Item 2 is referring to report 1 and no analysis was performed. **Item 3 was residue on four pieces of cotton, and that was found to contain heroin, a Schedule I narcotic. Item 4.1, residue on seven metal spoons, was found to contain heroin, a Schedule I narcotic.**

---

[17] Also known as Suboxone.

Item 4.2 was a piece of metal clamp and an empty syringe bag, and no analysis was performed. Item 5 was several syringes in a biohazard container, also no analysis performed.

**CW:** Thank you, one moment please. Just a couple more things. There were obviously two reports generated in this case. The first report, as you described, contained residue. Do you normally test residue?

**WITNESS:** Residue is normally only tested if it's the only item submitted, or if there's nothing else that's testable. So, for example, the plastic bag, if it's just a plain old plastic bag we would not have tested that as well.

**CW:** What if you were specifically requested to test it?

**WITNESS:** If it was not the only item in the case it would need to come from either the attorney or the law enforcement officer, like a direct request.

**CW:** Okay, thank you. I don't have any more questions at this time, your honor.

(emphasis added).

This testimony was the only expert testimony provided regarding the testing of the items found at the home. The only discernable fact from this testimony is that heroin was found on at least one of the four pieces of cotton and on at least one of the seven spoons found. What we don't know is how those items were tested. Specifically, and crucially, we don't know if those items were tested individually or together. The lab report says: "Item 3 Residue on four (4) pieces of cotton" and "Item 4.1 Residue on seven (7) metal spoons," instead of being itemized as, for example, "Item 3.1 Residue on cotton piece

13

one, Item 3.2 Residue on cotton piece two," and so on. This suggests that the cotton pieces and spoons were respectively tested together as a single item, rather than individually.[18]

This testing is fatal to the Commonwealth's case. Without knowing which of the items found actually contained heroin residue, there is no way to know where heroin was found within the home. Without any way of knowing where the heroin items were found in the home, there is no way to sufficiently connect them to McAlpin and prove he knew they were present and had them under his control under the heightened joint control standard.[19]

To demonstrate this conclusion we note that the Court of Appeals found it convincing that "the Commonwealth [introduced] evidence that spoons with cotton residue [sic] stuck to them were found in the medicine cabinet next to a prescription for amoxicillin with McAlpin's name on it and on a dresser table in the bedroom beside a gun with McAlpin's name on it." Even if this was what the evidence actually demonstrated,[20] it still would not have been enough to

---

[18] The jurors picked up on this problem themselves. During deliberations they sent out a question that read, "were all seven spoons individually tested, did all spoons test positive for heroin?" The trial court's response was that the jury had already heard the evidence, and the question could not be answered.

[19] It is also worth noting that the testimony only identified where six of the seven spoons were found. In addition, an investigating officer described one of the spoons as being "hidden" in a laundry basket that belonged to Silas filled with laundry that belonged to Silas. Even if that spoon was found to have heroin on it, there would have been no way for McAlpin to know it was there because it was hidden. And if it was in a basket belonging to Silas, filled with Silas' things, it was not subject to McAlpin's dominion and control.

[20] First, the investigating officer's testimony was that he believed the Amoxicillin prescription was located in the bathroom, but there "was no way to tell from the

14

prove McAlpin had constructive possession of heroin. Because, from the deficient testimony concerning the testing of the spoons, there is no way to know if those spoons had heroin residue on them in the first place.

The Court of Appeals also found the following recorded phone conversation between Amelia and McAlpin to be damning:

> **Amelia:** Dude, they found so many fuckin' syringes. Did you see how many syringes they found and spoons?
>
> **McAlpin:** Yeah, **I don't know whose shit that was.** That's what I'm saying dude.
>
> **Amelia:** It was Silas' shit. Chance's shit, your shit, my shit—
>
> **McAlpin:** That's what I'm saying dude, **none of that shit was even ours and you and me are gettin' charged with everybody else's bullshit.** That really pisses me off.

(emphasis added). Obviously, Amelia's response of "your shit" suggests that some of the illegal items found were McAlpin's. However, in the same conversation, McAlpin states that he did not know whose stuff it was and that it was not his. We therefore believe this conversation is just as consistent with innocence as guilt, and "circumstantial evidence as reasonably consistent with innocence as guilt is insufficient to sustain a conviction."[21]

---

picture." Second, no gun was found in the home, let alone a gun "with McAlpin's name on it."

[21] *Turner v. Commonwealth*, 328 S.W.2d 536, 538 (Ky. 1959) (citing *Lorman v. Commonwealth*, 269 S.W.2d 243 (Ky. 1954)).

Based on the foregoing, it was clearly unreasonable for the jury to convict McAlpin for possession of heroin because there was insufficient evidence to do so. A criminal conviction based on insufficient evidence is a denial of a defendant's right to Due Process. [22] McAlpin's right to Due Process was therefore violated, mandating a reversal of his conviction.

## III. CONCLUSION

After thorough review of the record we find that McAlpin's right to a unanimous jury verdict was not violated. However, his conviction was based on insufficient evidence. We therefore, reverse his conviction for possession of heroin.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Franklin Todd Lewis
Pasic & Lewis, PLLC

COUNSEL FOR APPELLEE:

Andy Beshear,
Attorney General of Kentucky

James Coleman Shackleford
Assistant Attorney General of Kentucky

---

[22] *Yates v. Commonwealth,* 430 S.W.3d 883, 888 (Ky. 2014).